IN THE UNITED STATES DISTRICT COURT

FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PATRICIA ANGELATOS, | : | |
| | : | |
| Plaintiff | : | #4: CV-04-2033 |
| | : | |
| vs. | : | (Judge John E. Jones, III) |
| | : | |
| US FOODS SERVICE, INC., | : | |
| BEVACO DIVISION, | : | (Magistrate Judge Malachy E. Mannion) |
| | : | |
| Defendant | : | |

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

AND NOW COMES Defendant, U.S. Foods Service, Inc., Bevaco Division ("USFS"), by and through its counsel, Babst, Calland, Clements & Zomnir, P.C., and pursuant to Rule 56 of the Federal Rules of Civil Procedure, hereby moves for Summary Judgment in its favor and against Plaintiff Patricia Angelatos (hereinafter "Plaintiff") on all counts of Plaintiff's Complaint on the basis that there are no genuine issues of material fact and USFS is entitled to judgment as a matter of law.  In support thereof, USFS submits the following Statement of Material Facts:

**I.     Plaintiff's Employment With USFS**

1. On or about March 5, 1997, Plaintiff Patricia Angelatos ("Plaintiff") commenced employment with Defendant USFS as an at-will employee.  (Tab 2, Deposition of Patricia Angelatos "Angelatos Depo." at 19-20) (Tab 3-4, Angelatos Deposition Exhibits "Angelatos Ex." 3 and 4.)

2. USFS communicated the employment offer on March 3 to Plaintiff by way of an offer letter.  (Tab 4, Angelatos Ex 4.)  The March 3 offer letter stated that Plaintiff's sales goal

by "June 1997 is to be at $10,000 per week at 10% gross profit; by September 1997 $17,500 per week" and went on through March 1998 to detail Plaintiff's sales goals.  Id.

    3.    USFS employed Plaintiff from on or around March 5, 1997 through September 2, 1997 as a Territory Manager at the rate of $400.00 per week. (Tab 4, Angelatos Ex. 4).

    4.    Plaintiff's job duties as Territory Manger included the following:

> Compiles lists of prospective customers for use as sales leads.
>
> Travels throughout assigned territory to call on regular and prospective customers to solicit orders and develop new accounts.
>
> Displays or demonstrates product, using samples or catalog, and emphasizes salable features.
>
> Quotes prices and credit terms and prepares sales contracts for orders obtained.
>
> Estimates date of delivery to customer, based on knowledge delivery schedules.
>
> Prepares reports of business transactions and keep records of accounts.
>
> (Tab 6, Angelatos Ex. 5)

    5.    On June 5, 1997, Plaintiff slipped at Mr. Z's Market in the produce department. (Tab 2, Angelatos Depo. at 88; Tab 7, Angelatos Ex. 6)   At the time, Plaintiff was purchasing vegetables and fruits for herself.  (Tab 2, Angelatos Depo. at 89)

    6.    On June 19, 1997, Plaintiff received a Notice of Compensation Payable from the Commonwealth of Pennsylvania indicating she was entitled to workers' compensation benefits at the rate of $271.00 per week because of her injury which was described as "contusions to back." (Tab 8, Angelatos Depo. Ex. 7)

7. During the time Plaintiff was on workers compensation leave, USFS permitted Plaintiff to work out of her house. (Tab 9, Angelatos Ex. 2). USFS also assigned another employee, Andi Silfin, to assist Plaintiff with managing her customer accounts. Id.

8. On July 14, 1997, Plaintiff wrote a letter to Bill Renfer, her supervisor with USFS, expressing her appreciation that he continues to pay her full salary even though she was "only doing about 1/3 of what [she] was doing prior to [her] injury…." (Tab 9, Angelatos Ex. 2)

9. Plaintiff also stated in the letter to Mr. Renfer that Ms. Silfin "has been such a great help" and "<u>actually has been doing most of the work for me</u>." (Emphasis added.) (Tab 9, Angelatos Ex. 2)

10. On June 19, 1997, Dr. Ricardo Nieves rendered his medical opinion that Plaintiff's injuries from the June 5, 1997 fall had resolved. (Tab 10, Angelatos Ex. 15)

11. On July 7, 1997, Case Manager May Robinson issued a report stating that Plaintiff should return to full duty on August 11, 1997. (Tab 11, Angelatos Ex. 16)

12. Dr. Mark Scinico issued a notice and Physician's Affidavit of Recovery to USFS that Plaintiff had fully recovered and could return to work without limitation on August 27, 1997. (Tab 12, Angelatos Ex. 21).

13. Dr. Scinico also provided information to USFS on a Physician Capabilities Check List, dated August 20, 1997, that Plaintiff had fully recovered and "may return to work with no restrictions." (Tab 13, Angelatos Ex. 20.)

## II. **Alleged Renfer Harassment**

14. The comments that Plaintiff alleges were made by Mr. Renfer that were sexually harassing are, according to the Plaintiff's testimony, limited to the following:

    Q.    And is that what you mean by sexist comments?

A. No, no, that was an action that, to me, I was not part of it. I got penalized. I actually got in trouble for not being present. They said I was supposed to be present. Well, how was I supposed to be present if you didn't give me a ride there. I couldn't drive there. I did ask for it. I'm talking about when they would say to me, "<u>Great job, Pat</u>," and he was good for that, Mr. Renfer, "<u>Great job, Pat, you keep up the good work because one of these days you'll be up here with us big boys.</u>" <u>To me, that's a sexist remark. I don't want to be up there with the big boys.</u>

Q. Mr. Renfer said that to you?

A. Yes.

Q. Do you recall when he made that comment?

A. It was many times, and it should be documented; it was many times. Yes, I did mention that to Lisa, and she laughed. They thought that was funny. "Oh, you don't know, Bill, that's how he talks."

Q. Let's take a step back. On how many occasons did Mr. Renfer make that comment to you?

A. <u>Maybe two times</u> in a really meaningful way.

Q. So he on two occasions said…

A. One time, he wrote it; I think he wrote it.

Q. Do you know when he wrote it?

A. No. Like I said, it should be there.

Q. <u>So he made the comments verbally on two occasions and you are stating that he wrote it on one other occasion.</u>

A. <u>Um-hum</u>.

Q. Other than those three occasions, did Mr. Renfer make any comments like that?

A. Well, he would say to me, "<u>You're in a man's field, a man's position</u>," you know, things like that, and I'd say, "No, it's not. Who told you it's a man's job?"

Tab 2, Angelatos Depo. at 66-68 (Emphasis Added).

4

15. Plaintiff further testified that Andi Silfin heard Mr. Renfer make other remarks that supported her sexual harassment claim, however, Mr. Silfin specifically denied hearing any statements. (Tab 2, Angelatos Depo. at 69)

16. On August 27, 1997, Director of Human Resources for USFS, Allison Davis, sent Plaintiff a letter stating that: (1) USFS received the Physician's Affidavit of Recovery indication she could return to work without limitation; and (2) USFS anticipated her return on Tuesday, September 2, 1997. (Tab 14, Angelatos Ex. 22)

### III. Declining Sales and Lack of Territory Development

17. As of June 5, 1997, the date of Plaintiff's injury, Plaintiff had opened 21 new accounts and had a weekly sales average of $3,803.20. (Tab 15, USF 310-USF311).

18. From on or around June 5, 1997 through July 18, 1997, Plaintiff's accounts were handled by Plaintiff out of her house and Andi Silfin by telephone. Tab 9, Angelatos Depo. Ex. 2.

19. On or around July 14, Plaintiffs recognized that the accounts needed to be transferred to someone who could service customers in-person and full-time. Id.

20. On July 14, 1997, Plaintiff stated the following:

> "I went over my weekly reports, I see my sales have drop (sic) so much since I gotten hurt, I just hope we don't start losing the accounts al-together for Hickory Valley. They want me or another salesperson to show up in person at 4:00 a.m. every Monday morning for the order. They say that if we can't they will not deal with us any longer. <u>So if you want to turn this account and Mt. Bethel Diner, Billy's Pocono Diner and any other account of mine to another salesperson, I will understand. I'd rather we don't lose the accounts</u>."

Angelatos Depo. Ex. 2 (Emphasis Added).

21. By July 18, 1997, Plaintiff's average sales were $1,770.28 and she had only 6 active customers at that time.

22. USFS' territories normally consist of 35 to 40 customer accounts. Tab 16, Deposition of Allison Davis ("Davis Depo.") at 112.

23. In late July 1997, USFS transferred Plaintiff's remaining 6 accounts to Mike Lazo so that USFS would not lose the accounts. Tab 2, Angelatos Depo. at pg. 196.

**IV.   JP Food Service's Acquisition of USFS.**

24. In late 1997, JP Food Service acquired USFS. Tab 17, Deposition of Lee Eckert ("Eckert Depo.") at pp 69-71.

25. Although the acquisition by JP Food Service did not directly result in changes and/or reductions to the sales staff, the corporate change did impact USFS' decision-making process in that "another sister company within 60 miles" would be present and it was anticipated that there would be "several overlapping areas of coverage." Tab 17, Eckert Depo at pp. 71-115.

**V.   USFS' Decision to Lay Off Plaintiff Due to Lack of Work in Her Former Territory.**

26. Once USFS received the Physician's Affidavit of Recovery on or about August 27, 1997, indicating the Plaintiff could return to work without limitation, it determined that it would have a surplus of territory managers due to the JP Food Service acquisition and the need for fewer territory managers given Plaintiff's few remaining accounts.

27. When questioned during her deposition about the decision to lay off the Plaintiff, USFS Human Resources Director Allison Davis testified as follows:

> Q.   Do you remember the reason that was given to her why she wasn't going to be allowed to come back to work?
>
> A.   I don't remember Craig's exact words.
>
> Q.   Do you remember the substance of what was said?
>
> A.   That we were in the process of a merger with J.P. Food Service. I recall there were three territory managers in the Poconos from J.P. three from

6

>   ours. Declining sales in Pat's territory. And this decision was made to lay Pat off due to a lack of work.

Tab 16, Davis Depo. at 95-96.

28. The testimony of Ms. Davis cited above in Paragraph 27 is uncontroverted.

29. Ms. Davis went on to testify as follows:

>   Q. Okay. Do you know, was Ms. Angelatos' territory eliminated?
>
>   A. I know that there was a lack of accounts in that territory. That's a hard question for us because what I may consider a territory --- again, on the human resource side. Usually a territory consists of 35 to 40 accounts.
>
>   Q. Uh-huh (yes).
>
>   A. And the territory manager will call on --- that's what I call a territory. Would I call somebody just trying to develop a territory with six accounts? That's hard for me to explain unless you can give me a little more insight into that.

Tab 16, Davis Depo. at 112.

30. With regard to Plaintiff's lay off, USFS stated in its Position Statement to the PHRC that:

>   "During this period of time USF was also in the process of a merger with JP Foodservice. JP Foodservice currently had 3 Territory Managers in the Pocono regions, as well as USF had 3 Territory Managers covering outlying areas close to the Poconos. It was decided that because of the lack of business in Complainants previous territory, the remaining accounts would stay with Mike Lazo.
>   As a result on September 2, 1997 a business decision was made to lay off Complainant due to the lack of business in her territory."

Tab 18, USFS Position Statement Submitted to Pennsylvania Human Relations Commission.

Respectfully submitted,

By:   /s/ Matthew H. Smith
    Amy H. Marshall, Esq.
    Pa. Id. No. 74852
    Matthew H. Smith, Esq.
    Pa. Id. No. 84277

    101 Innovation Boulevard
    Suite 206
    State College, PA  16803
    (814) 867-8055

**CERTIFICATE OF SERVICE**

    I, Matthew H. Smith, hereby certify that on this 10th day of April, I caused a true and correct copy of the foregoing Statement of Undisputed Material Facts to be filed via the Court's Electronic Case Filing System. The document is available for viewing and downloading from the Court's Electronic Case Filing System. I have also caused a true and correct copy of the document to be served upon the following by first class mail, postage prepaid:

        Ralph J. Johnston, Jr.
        250 Pierce Street, Suite 308
        Kingston, PA  18704

        /s/ Matthew H. Smith